**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| PAUL DOUGLAS, Individually and for Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| THUNDER BASIN COAL COMPANY, L.L.C. | FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Paul Douglas (Douglas) brings this collective action to recover unpaid wages and other damages from Thunder Basin Coal Company, L.L.C. (Thunder Basin).

2.      Thunder Basin employed Douglas as one of its Hourly Employees (defined below).

3.      Thunder Basin pays Douglas and the other Hourly Employees by the hour.

4.      The Hourly Employees regularly work more than 40 hours in a workweek.

5.      But Thunder Basin does not pay the Hourly Employees for all the hours they work, including overtime hours.

6.      Instead, Thunder Basin requires Douglas and the other Hourly Employees to suit out in protective clothing and safety gear fundamentally necessary to perform their job duties and gather other fundamentally necessary tools and equipment, while on Thunder Basin's premises, "off the clock."

7.      Likewise, Thunder Basin requires Douglas and the other Hourly Employees to change out of and store their safety gear and protective clothing, store tools and other equipment, and wash-up, while on Thunder Basin's premises, "off the clock" (¶¶ 6-7 collectively Thunder Basin's "off the clock policy").

8.    Thunder Basin does not pay Douglas and the other Hourly Employees for this time they spend donning and doffing their safety gear and protective clothing, gathering and storing tools and equipment, and washing up.

9.    Additionally, Thunder Basin pays Douglas and the other Hourly Employees non-discretionary bonuses, including safety and production bonuses, that Thunder Basin fails to include in these employees' regular rates of pay for overtime purposes (Thunder Basin's "bonus pay scheme").

10.    Thunder Basin's off the clock policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Douglas and the other Hourly Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## Jurisdiction & Venue

11.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.    This Court has general personal jurisdiction over Thunder Basin because Thunder Basin maintains its principal place of business in Missouri.

13.    Venue is proper because Thunder Basin maintains its principal place of business in St. Louis, Missouri, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

14.    Thunder Basin employed Douglas as a blaster and drill and blast supervisor from approximately July 2004 through August 2024.

15.    Throughout his employment, Thunder Basin paid Douglas by the hour and subjected him to its off the clock policy and bonus pay scheme.

16.    Douglas's written consent is attached as **Exhibit 1**.

- 2 -

17.     Douglas brings this collective action on behalf of himself and the other hourly employees subjected to Thunder Basin's off the clock policy and/or its bonus pay scheme.

18.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Thunder Basin employees who worked during the last three years through final resolution of this action (the "Hourly Employees").**

19.     Thunder Basin is a Delaware limited liability company with its principal place of business in St. Louis, Missouri.

20.     Thunder Basin may be served with process through its registered agent: **CT Corporation System, 2232 Dell Range Blvd., Suite 200, Cheyenne, Wyoming 82009**.

## FLSA COVERAGE

21.     At all relevant times, Thunder Basin was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Thunder Basin was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Thunder Basin was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24.     At all relevant times, Thunder Basin had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25.     At all relevant times, Douglas and the other Hourly Employees were Thunder Basin's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26.    At all relevant times, Douglas and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

FACTS

27.    Thunder Basin is the operator of the "Black Thunder mine and also the Coal Creek mine" in Wyoming's Powder River Basin.[1]

28.    To meet its business objectives, Thunder Basin employs workers, including Douglas and the other Hourly Employees, to extract and process coal.

29.    For example, Thunder Basin employed Douglas from approximately July 2004 through August 2024 as a blaster and drill and blast supervisor.

30.    As a blaster and drill and blast supervisor, Douglas's job duties included drilling holes, placing explosives, and igniting the explosives, as well as overseeing the drill and blast operations, coordinating with teams on drilling locations, and getting equipment moved to different drill locations, in accordance with Thunder Basin's direction.

31.    Likewise, Douglas's job duties included donning and doffing his safety gear and protective clothing, gathering tools and equipment, and washing up, on Thunder Basin's premises.

32.    Throughout his employment, Douglas recorded his "on the clock" hours using the timekeeping system designated by Thunder Basin.

33.    Thus, Thunder Basin's employment records reflect the number of "on the clock" hours Douglas recorded working each week.

34.    Throughout his employment, Douglas regularly worked more than 40 hours a workweek.

---

[1] https://corenaturalresources.com/products/ (last visited June 4, 2025).

35.    Indeed, Douglas typically worked approximately 12 hours a day and 3 to 4 days a week (36 to 48 hours a workweek) "on the clock."

36.    But Thunder Basin did not pay Douglas for all her hours worked.

37.    Instead, Thunder Basin consistently subjected Douglas to its off the clock policy.

38.    Specifically, Thunder Basin required Douglas to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, and gloves) fundamentally necessary to performing his job, gather fundamentally necessary tools and other equipment, on Thunder Basin's premises, "off the clock," without compensation.

39.    This took Douglas approximately 15 to 30 minutes each workday.

40.    Douglas could not perform his principal job duties in accordance with Thunder Basin's, policies, procedures, and expectations without this protective clothing, safety gear, and other equipment.

41.    Indeed, much of the gear Thunder Basin required Douglas to utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 77, *et seq.*

42.    The donning of protective clothing and safety gear and gathering of tools and other equipment were therefore integral and indispensable work duties for Douglas.

43.    Likewise, Thunder Basin required Douglas to remove and store his safety gear and protective clothing, store tools and other equipment, and shower each workday "off the clock" and without compensation.

44.    This also took Douglas approximately 15 to 30 minutes each workday.

45.    Douglas could not perform his job duties in accordance with Thunder Basin's policies, procedures, and expectations without removing and storing this safety gear and protective clothing, as well as tools and other equipment, and washing up each workday.

46.     Douglas could not safely perform her job duties in accordance with Thunder Basin's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

47.     The removal and storage of safety gear and protective clothing, as well as other equipment, and washing up each day were therefore integral and indispensable work duties for Douglas.

48.     But under its off the clock policy, Thunder Basin did not pay him for this compensable work time.

49.     Thus, because of its off the clock policy, Thunder Basin failed to pay Douglas overtime wages for all his overtime hours worked during workweeks he worked in excess of 40 hours.

50.     Douglas and the other Hourly Employees perform their jobs under Thunder Basin's supervision and use materials, equipment, and technology Thunder Basin approves and supplies.

51.     Thunder Basin requires Douglas and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

52.     Douglas and the other Hourly Employees must strictly adhere to Thunder Basin's uniform standards.

53.     Each pay period, Douglas and the other Hourly Employees receive hourly wages from Thunder Basin that are determined by common systems and methods that Thunder Basin selects and controls.

54.     Likewise, the other Hourly Employees typically work approximately 12 hours a day and 3 to 4 days a week (36 to 48 hours a workweek) "on the clock."

55.     But like Douglas, Thunder Basin fails to pay its other Hourly Employees for all compensable hours worked.

56.     Indeed, Thunder Basin subjects the other Hourly Employees to the same or similar off the clock policy it imposed on Douglas.

57.     Specifically, just as with Douglas, Thunder Basin requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, and gloves) and gather other equipment fundamentally necessary to performing their jobs, while on Thunder Basin's premises "off the clock," and without compensation.

58.     Indeed, much of the gear Thunder Basin required Douglas to utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 77, *et seq*.

59.     And, like Douglas, Thunder Basin requires them to remove and store his safety gear and protective clothing, store tools and other equipment, and shower each workday "off the clock" and without compensation.

60.     Like Douglas, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" and without pay.

61.     Thus, just as with Douglas, Thunder Basin does not pay the other Hourly Employees for this integral and indispensable work they are required to perform.

62.     And, just as with Douglas, these job duties take the other Hourly Employees approximately an 30 minutes to an hour to complete each workday.

63.     Thunder Basin fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Thunder Basin does not want performed.

64.     And Thunder Basin knows, should know, or recklessly disregards whether its Hourly Employees routinely perform this integral and indispensable work "off the clock" and without compensation.

65.     Thus, Thunder Basin requires, requests, suffers, or permits Douglas and the other Hourly Employees to work "off the clock" and without compensation.

66.     Despite accepting the benefits, Thunder Basin does not pay Douglas and the other Hourly Employees for the compensable work they perform "off the clock."

67.     Thus, under Thunder Basin's uniform off the clock policy, Douglas and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" during workweeks in which they work more than 40 hours.

68.     Thunder Basin fails to pay Douglas and the other Hourly Employees at the required premium rate for all overtime hours worked.

69.     Instead, Thunder Basin pays Douglas and the other Hourly Employees under its bonus pay scheme.

70.     Specifically, Thunder Basin pays Douglas and the other Hourly Employees non-discretionary bonuses, including production and safety bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

71.     Thus, under its bonus pay scheme, Thunder Basin fails to pay Douglas and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

72.     The Hourly Employees are thus subject to the same or similar unlawful policies—Thunder Basin's off the clock policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

73.     Douglas brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

74.     Like Douglas, the other Hourly Employees are victimized by Thunder Basin's off the clock policy and bonus pay scheme.

75.     Other Hourly Employees worked with Douglas and indicated they were paid in the same manner, performed similar work, and were subject to Thunder Basin's same off the clock policy and bonus pay scheme.

76.     Based on his experience with Thunder Basin, Douglas is aware Thunder Basin's off the clock policy and bonus pay scheme were imposed on other Hourly Employees.

77.     The Hourly Employees are similarly situated in the most relevant respects.

78.     Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

79.     Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

80.     Rather, Thunder Basin's off the clock policy and bonus pay scheme render Douglas and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

81.     Thunder Basin's records reflect the number of "on the clock" hours the Hourly Employees recorded working each week.

82.     Thunder Basin's records also show Thunder Basin paid the Hourly Employees non-discretionary bonuses.

83.     Thunder Basin's records show it failed to include these non-discretionary bonuses in their regular rates of pay.

84.     The back wages owed to Douglas and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

85. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Thunder Basin's records, and there is no detraction from the common nucleus of liability facts.

86. Therefore, the issue of damages does not preclude collective treatment.

87. Douglas's experiences are therefore typical of the experiences of the other Hourly Employees.

88. Douglas has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

89. Like each Hourly Employee, Douglas has an interest in obtaining the unpaid wages owed under federal law.

90. Douglas and his counsel will fairly and adequately protect the interests of the Hourly Employees.

91. Douglas retained counsel with significant experience in handling complex collective action litigation.

92. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Thunder Basin will reap the unjust benefits of violating the FLSA.

93. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

94. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Thunder Basin.

95. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

96. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

97.     Among the common questions of law and fact are:

a.      Whether Thunder Basin imposed its off the clock policy on the Hourly Employees;

b.      Whether Thunder Basin's off the clock policy deprived the Hourly Employees of overtime compensation;

c.      Whether Thunder Basin paid the Hourly Employees non-discretionary bonuses;

d.      Whether Thunder Basin failed to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime;

e.      Whether Thunder Basin failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

f.      Whether Thunder Basin's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

g.      Whether Thunder Basin's violations were willful.

98.     As part of its regular business practices, Thunder Basin intentionally, willfully, and repeatedly violated the FLSA with respect to Douglas and the other Hourly Employees.

99.     Thunder Basin's off the clock policy and bonus pay scheme deprived Douglas and the other Hourly Employees of overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

100.    There are many similarly situated Hourly Employees who have been denied overtime wages who would benefit from the issuance of a court supervised notice of this lawsuit and the opportunity to join it.

101.    The Hourly Employees are known to Thunder Basin, are readily identifiable, and can be located through Thunder Basin's business and personnel records.

### THUNDER BASIN'S VIOLATIONS WERE WILLFUL

102.    Thunder Basin knew it employed the Hourly Employees.

103.    Thunder Basin knew its Hourly Employees were entitled to be paid for each hour worked, including overtime hours.

104.    Thunder Basin knew it was subject to the FLSA's overtime provisions.

105.    Thunder Basin knew Douglas and the other Hourly Employees were its hourly, non-exempt employees.

106.    Thunder Basin knew the FLSA required it to pay non-exempt employees, including Douglas and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

107.    Thunder Basin knew Douglas and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because their "on the clock" hours were recorded via its timekeeping system.

108.    Thunder Basin knew it paid the Hourly Employees according to its off the clock policy.

109.    Thunder Basin knew it had a duty to ensure the Hourly Employees were not performing work "off the clock," without pay.

110.    Thunder Basin knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather tools and other equipment, and wash-up, "off the clock."

111.    Thunder Basin knew it controlled the Hourly Employees' work procedures.

112.    Thunder Basin knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Thunder Basin.

113.    Thunder Basin knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties.

114.    Thunder Basin knew the Hourly Employees routinely performed this daily, required "off the clock" work for Thunder Basin's predominant benefit.

115.    In other words, Thunder Basin knew the Hourly Employees performed compensable work (e.g., donning/doffing their safety gear and protective clothing, gathering tools and equipment, and washing-up) "off the clock," and without compensation.

116.    Thunder Basin knew it paid Douglas and the other Hourly Employees non-discretionary safety and production bonuses.

117.    Thunder Basin knew these non-discretionary bonuses and shift differentials were not included in Douglas's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

118.    And Thunder Basin knew the FLSA required it to pay Douglas and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

119.    Thunder Basin knew Douglas, and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

120.    Thus, Thunder Basin knew, should have known, or recklessly disregarded whether it failed to pay Douglas and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

121.    Thunder Basin's failure to pay Douglas and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

122.    Thunder Basin knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and off the clock policy that deprived Douglas and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA.

### CAUSE OF ACTION
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

123.    Douglas brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

124.    Thunder Basin violated, and is violating, the FLSA by employing non-exempt employees, such as Douglas and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

125.    Thunder Basin's unlawful conduct harmed Douglas and the other Hourly Employees by depriving them of the overtime wages they are owed.

126.    Accordingly, Thunder Basin owes Douglas and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

127.    Because Thunder Basin knew, or showed reckless disregard for whether its bonus pay scheme and off the clock policy violated the FLSA, Thunder Basin owes Douglas and the other Hourly Employees these wages for at least the past 3 years.

128.    Thunder Basin is also liable to Douglas and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

129.     Finally, Douglas and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in their action.

## JURY DEMAND

130.     Douglas demands a trial by jury on all Counts.

## RELIEF SOUGHT

**WHEREFORE**, Douglas, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.     An Order designating their lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join their action by filing a written notice of consent;

b.     An Order finding Thunder Basin liable to Douglas and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

c.     Judgment awarding Douglas and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA;

d.     An Order awarding attorneys' fees, costs, and expenses;

e.     An Order awarding pre- and post-judgement interest at the highest applicable rates; and

f.     Such other and further relief as may be necessary and appropriate.

Dated: June 9, 2025

Respectfully submitted,

**ENGELMEYER & PEZZANI, LLC**

By: */s/ Anthony M. Pezzani*
Tony Pezzani MO Bar No. 52900
13321 N. Outer Forty Road, Suite 300
Chesterfield, MO 63017
Phone: (636) 532-9933
Fax: (314) 448-4320
tony@epfirm.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR DOUGLAS &
THE HOURLY EMPLOYEES**